UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN ALLEN McCRACKEN, | |
| Plaintiff, | Case No. C21-5222-JLR-MLP |
| v. | |
| WILLIAM MANNESS BRYAN, | REPORT AND RECOMMENDATION |
| Defendant. | |

## I.  INTRODUCTION AND SUMMARY CONCLUSION

This is a *pro se* civil action filed by Plaintiff Steven McCracken, a federal prisoner who is currently confined at the United States Penitentiary in Leavenworth, Kansas. Service has not been ordered. This Court, having reviewed Plaintiff's complaint, and the balance of the record, concludes that Plaintiff has not stated a plausible claim for relief in this action. The Court therefore recommends that Plaintiff's complaint and this action be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

REPORT AND RECOMMENDATION
PAGE - 1

## II. BACKGROUND

Plaintiff is currently serving a fourteen-year prison sentence that was imposed following his 2012 conviction in this Court on charges of conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. *See United States v. Steven Allen McCracken*, CR11-5295-RBL, Dkt. ## 10, 134, 155. In March 2021, Plaintiff submitted to the Court for filing a civil complaint under 18 U.S.C. § 1595, the civil remedy provision of the Trafficking Victims Protection Act ("TVPA"). The claims set forth in Plaintiff's complaint relate to the drug offenses for which he is currently confined. (*See* Dkt. # 5, Complaint (Compl.).) In particular, Plaintiff asserts in his complaint that his longtime acquaintance, Defendant William Bryan, coerced him into participating in the drug transaction which led to his conviction and confinement, and that Defendant Bryan's conduct violated various provisions of the TVPA, thus entitling Plaintiff to an award of damages under § 1595 in the amount of $11 million. (*See id*. at 1, 15-19.)

After reviewing the complaint, this Court concluded that Plaintiff had not identified therein any plausible claim for relief. The Court therefore issued an Order directing Plaintiff to show cause why this action should not be dismissed. (Dkt. # 6.) Plaintiff filed a response to the Order to Show Cause in which he offers extensive argument as to why he should be permitted to proceed with his claims against Defendant Bryan. (Dkt. # 8.) Plaintiff filed with his response a motion for leave to amend his complaint, which is actually a request to supplement his original complaint with additional details and facts apparently intended to demonstrate the plausibility of his claims. (*See* Dkt. ## 9, 9-1.) The Court has now reviewed all of Plaintiff's materials and, for

the reasons set forth below, once again concludes that Plaintiff has not identified any plausible claim for relief in this action.

### III. DISCUSSION

Plaintiff seeks damages under 18 U.S.C. § 1595 based upon Defendant William Bryan's alleged violations of various provisions of the TVPA. Pursuant to § 1595(a), "[a]n individual who is a victim of a violation of [Chapter 77 of Title 18] may bring a civil action against the perpetrator . . . in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." Plaintiff alleges that Defendant Bryan violated various provisions of Chapter 77, including those which criminalize forced labor (§ 1589), involuntary servitude (§ 1584), and peonage (§ 1581). Plaintiff also alleges that Defendant Bryan benefitted from the alleged violations of §§ 1581, 1584, and 1589, in violation of 18 U.S.C. §§ 1589(b) and 1593A, and that Defendant Bryan attempted to commit, and conspired to commit, the alleged violations of §§ 1584 and 1589, in violation of 18 U.S.C. § 1594(a)-(b).

The forced labor statute prohibits knowingly providing or obtaining labor or services of a person (1) "by means of force, threats of force, physical restraint, or threats of physical restraint," (2) "by means of serious harm or threats of serious harm," (3) "by means of the abuse or threatened abuse of law or legal process," or (4) "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person … would suffer serious harm …." 18 U.S.C. § 1589(a)(1)-(4).

The involuntary servitude statute prohibits "knowingly and willfully hold[ing] to involuntary servitude or sell[ing] into any condition of involuntary servitude, any other person for any term, or bring[ing] within the United States any person so held[.]" 18 U.S.C. § 1584(a).

REPORT AND RECOMMENDATION
PAGE - 3

The TVPA defines the term "involuntary servitude" to include "a condition of servitude induced by means of any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint," or "the abuse or threatened abuse of the legal process." TVPA, § 103(5)(A)-(B) (codified at 22 U.S.C. § 7102(6)(A)–(B) (2015)). *Black's Law Dictionary* defines "servitude" as "[t]he condition of being a servant or slave." BLACK'S LAW DICTIONARY (11th ed. 2019).

Finally, the peonage statute subjects to criminal penalties a person who "holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage." 18 U.S.C. § 1581(a). The essence of peonage is "compulsory service in payment of a debt." *Bailey v. Alabama*, 219 U.S. 219, 242 (1911). As the Supreme Court explained in *Bailey*, "[a] peon is one who is compelled to work for his creditor until his debt is paid." *Id*. The Supreme Court, in *Bailey*, equated "compulsory service" with "involuntary servitude." *Id*. at 243.

As this Court explained in its Order to Show Cause, in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). In addition, a complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court also explained in its Order to Show Cause that it is important to bear in mind, in evaluating Plaintiff's claims, the purpose of the statutes Plaintiff relies upon to support his request for monetary relief under § 1595. Notably, sections 1581 and 1584 were enacted by Congress to implement the Thirteenth Amendment.[1] *See United States v. Mussry*, 726 F.2d 1448, 1451 (9th Cir. 1984), abrogated by *United States v. Kozminski*, 487 U.S. 931 (1988). The remaining statutes referenced by Plaintiff, including § 1589, were enacted as a part of the TVPA. Congress's express purpose in enacting the TVPA in 2000 was "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, and to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386, § 102(a) (2000).

Plaintiff's claims that Defendant Bryan subjected him to involuntary servitude, forced labor, and peonage are all based upon his underlying allegation that Defendant Bryan threatened him in order to secure his assistance and participation in the drug transaction that led to his arrest and conviction. As this Court explained in its Order to Show Cause, the facts set forth in Plaintiff's complaint demonstrate that at the time the events at the heart of this case unfolded in

---

[1] The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. Though the primary purpose of the Thirteenth Amendment was to abolish the institution of African slavery, it was not limited to that purpose. *Kozminski*, 487 U.S. at 942. "The phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Id*. (citing *Butler v. Perry*, 240 U.S. 328, 332 (1916)).

REPORT AND RECOMMENDATION
PAGE - 5

March 2011, Plaintiff and Defendant Bryan had known each other for many years and their relationship had at times involved drug dealing activities. (*See* Compl. at 2-13.) On March 23, 2011, Defendant Bryan purportedly called Plaintiff and asked him to arrange a drug transaction with Defendant Bryan's "Mexican connections." (*Id*. at 2.) When Plaintiff objected to the request, an argument ensued during which Defendant accused Plaintiff "of various transgretions [sic]," and Plaintiff "argued back defending the allegations." (*Id*.) Among the accusations leveled by Defendant Bryan during this interaction was that Plaintiff was "starving out" and "cutting the throat" of both Defendant Bryan and Brandon Davis ("B.D.") whom Plaintiff identified as either Defendant Bryan's son-in-law or his daughter-in-law's boyfriend. (*Id*. at 3.)

According to Plaintiff, "[a]fter some back and forth," Defendant Bryan made the following statements to him: "You think I'm gonna sit here out of dope while you are the only one that has [or can get] product?" and "I'm not going to take that!" (*Id*.) Plaintiff claimed that when Defendant Bryan made these statements, he "lowered his voice tone to a godfather type tone" that matched the tone he had used in making previous threats. (*Id*. at 2.) Plaintiff asserted that Defendant Bryan intended these statements to be construed as a threat, that Defendant Bryan, "if reasonable," should have known Plaintiff would construe them as a threat, and that Plaintiff did, in fact, construe them as a threat. (*Id*.) Plaintiff claimed that following issuance of this alleged threat, he called B.D. and complained about B.D. having sent Defendant Bryan to threaten him. (*Id*.) After B.D. apologized to Plaintiff for Defendant Bryan's conduct, Plaintiff claimed he then proceeded to contact the "Mexican suppliers" regarding the drug transaction Defendant Bryan had allegedly demanded he arrange. (*Id*. at 2-3.)

Plaintiff went on to detail in his complaint his history with Defendant Bryan, describing various threats Defendant Bryan purportedly made to him and emphasizing, in particular, the tone of voice Defendant Bryan used in making these purported threats. (*See id*. at 6-10.) Plaintiff claimed he was conditioned by Defendant Bryan to respond to a certain tone of voice, and that the tone of voice would itself cause him fear even in the absence of an explicit threat. (*Id*. at 10.) Among the threats issued by Defendant Bryan over the years were threats to kill Plaintiff and to burn down his house. (*See id*. at 6-10.) Plaintiff explained that the threat to burn down his house was particularly concerning because there were large amounts of dangerous chemicals in the residence which could cause "massive harm" if burned, and Plaintiff had no way to legally remove the chemicals from his residence. (*Id*. at 11-12.)

Plaintiff acknowledged in his complaint that prior to the events of March 23-25, 2011, Defendant Bryan's threats were designed to "coerce" him into respecting Defendant Bryan's "rights" and not to force him into buying and/or selling drugs. (*Id*. at 13.) According to Plaintiff, Defendant Bryan's prior threats "focused on forcing Plaintiff to do or not do other stuff, such as not stealing customers, money, or drugs, not attacking Defendant with a tazer [sic] or other weapon or sending certain people or anyone else to do violence onto Defendant Bryan, not undermining business with cheaper products, [and] not stealing Defendant Bryan's women or suppliers[.]" (*Id*.) Plaintiff claimed that he dealt with these threats by simply obeying Defendant Bryan's commands. (*Id*.) Plaintiff asserted, however, that he was unprepared to respond to the perceived threat made by Defendant Bryan in relation to the March 2011 drug transaction which was different from his prior threats "and infringed upon Plaintiff's personal right to say no in a way that being forced to respect Defendant Bryan's personal rights did not." (*Id*.)

REPORT AND RECOMMENDATION
PAGE - 7

The Court observed in its Order to Show Cause that nothing in the facts alleged by Plaintiff suggested that "servitude" properly described the relationship he had with Defendant Bryan. (Dkt. # 6 at 6.) The facts did not demonstrate that Plaintiff was a servant or slave to Defendant Bryan, but instead showed that Plaintiff was enlisted on one occasion to arrange and execute a drug transaction, purportedly against his will. (*Id.*) The Court also noted that the purported coercion engaged in by Defendant Bryan was, by Plaintiff's own admission, not an explicit threat but instead was comprised of two brief statements that Plaintiff claimed he construed as threatening because of the tone used by Defendant Bryan in making those statements. (*Id.*) The Court advised Plaintiff that his self-serving assertion that he perceived the statements to constitute a threat and that Defendant Bryan should reasonably have known Plaintiff would do so, was insufficient to elevate Defendant Bryan's conduct to the type of conduct criminalized in §§ 1589, 1584, and 1581. (*Id.*)

Finally, the Court observed that Plaintiff had made similar allegations regarding Defendant Bryan's role in prompting his involvement in the drug transaction placed at issue in this case when he presented a duress defense at his criminal trial, a defense the jury definitively rejected when it found Plaintiff guilty of the two charged drug offenses. (*Id.* (citing *U.S. v. McCracken*, CR11-5295-RBL, Dkt. ## 134, 150, 151, 175).) The Court deemed unavailing Plaintiff's attempt to recycle the defense asserted in his criminal trial ten years after the fact in hopes of obtaining a monetary settlement which would compensate him for the years he has spent in prison for crimes he clearly believes Defendant Bryan bears some responsibility for. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 8

      This Court ultimately concluded that Plaintiff had not plausibly alleged any claims against Defendant Bryan arising under §§ 1589, 1584, and 1581, and that his remaining claims under the TVPA, including alleged violations of § 1593A (benefitting financially from peonage, slavery, and trafficking in persons), § 1594(a) (attempt to violate §§ 1581, 1584, and 1589), and § 1594(b) (conspiracy to violate §§ 1581 and 1584), necessarily failed because those claims depended on Plaintiff sufficiently alleging predicate offenses under the TVPA, which he had not done.

      Plaintiff, in his response to the Order to Show Cause, argues that this action should not be dismissed for failure to identify a plausible claim for relief. Plaintiff's response contains a significant amount of unnecessary detail and a number of arguments that are simply unhelpful in assessing the plausibility of his claims. The Court will focus its attention on the potentially relevant arguments offered by Plaintiff. Plaintiff begins by arguing that Defendant Bryan's actions constitute involuntary servitude even if Plaintiff initially consented to voluntarily participate in the conduct at issue, and was paid or expecting payment, but then sought to withdraw. (Dkt. # 8 at 3.) Plaintiff maintains that once he argued for his right to withdraw, as he apparently claims he did in his conversation with Defendant Bryan on March 23, 2011, Defendant Bryan purportedly threatened Plaintiff in order to overcome his resistance, and his provision of subsequent labor or services therefore constituted involuntary servitude. (*See id*. at 3, 6.) This argument, as presented in Plaintiff's response, lacks context and clarity. However, a review of some of the materials on file in Plaintiff's underlying criminal case aided the Court in understanding this argument.

REPORT AND RECOMMENDATION
PAGE - 9

The criminal case record reveals that Plaintiff had an extensive criminal history as a methamphetamine dealer prior to the events of March 2011. *See U.S. v. McCracken*, C11-5295-RBL, Dkt. # 150 at 7. The record further reveals that Plaintiff had been involved in the methamphetamine conspiracy he was convicted of for months prior to the transaction he participated in on March 25, 2011 which resulted in his arrest. *See id.*, Dkt. # 150 at 6-7 and Dkt. # 181 at 17-18. Plaintiff's involvement in the conspiracy included buying methamphetamine, working with the government's confidential informant, and using his polarimeter device to test the quality of the methamphetamine he was purchasing. *Id*. Plaintiff appears to acknowledge in his response to the Order to Show Cause that he voluntarily engaged in the methamphetamine conspiracy for a period of time, but he then goes on to claim that he sought to withdraw from the conspiracy on March 23, 2011, and Defendant Bryan would not allow him to do so. (*See* Dkt. # 8 at 3, 6.) Plaintiff's claim that he was coerced into participating in the singular transaction which resulted in his arrest, after many months of participating in the conspiracy, does not state a plausible claim of involuntary servitude or forced labor.

Plaintiff also points out in his response that a victim's special vulnerability may be relevant to determining whether a particular type or degree of coercion is sufficient to hold a person in involuntary servitude, and he suggests that even an implied threat from Defendant Bryan was sufficient to establish involuntary servitude because Plaintiff's mental health issues, which apparently include schizophrenia and/or schizo-affective disorder, made him particularly vulnerable to such threats. (*See id*. at 3-4.) Given Plaintiff's substantial history of engagement in drug trafficking activities, and his lengthy involvement in the methamphetamine conspiracy of which the March 25, 2011 transaction was a part, the claim that any threat was required to

REPORT AND RECOMMENDATION
PAGE - 10

prompt his participation, much less an implied one, makes his claim of coercion implausible. Moreover, as previously noted, while Defendant Bryan apparently had a history of issuing random threats, by Plaintiff's own admission there was no history of Defendant Bryan issuing threats to prompt Plaintiff's participation in drug dealing activities. And, there are no facts alleged in either Plaintiff's original complaint or in his proposed amendment to suggest that Defendant Bryan controlled Plaintiff's activities to the extent required to constitute involuntary servitude.

With respect to Plaintiff's allegation of peonage which, as stated above, is based on compulsory service in payment of a debt, Plaintiff argues in his response to the Order to Show Cause that when Defendant Bryan accused Plaintiff of wronging him by "starving him out" or "cutting his throat" in relation to their drug dealing activities, Defendant Bryan "establish[ed] a right to carry out the threatened harm" which "force[d] Plaintiff to agree to owe a duty of carrying out the drug transaction" to avoid the threatened harm. (*Id*. at 10.) While this argument is creative, it is ultimately unavailing. Plaintiff alleges no facts in his complaint, or in his proposed amendment to his complaint, that demonstrate Plaintiff has any viable claim against Defendant Bryan arising under the peonage statute, 18 U.S.C. § 1581.

Finally, Plaintiff takes issue with the Court's comment in its Order to Show Cause that some of Plaintiff's assertions regarding Defendant's purported threat were "self-serving." (*Id*. at 17.) In particular, the Court cited to Plaintiff's assertions that he perceived Defendant Bryan's statements as a threat and that Defendant Bryan should reasonably have known Plaintiff would do so. (Dkt. # 6 at 6.) Plaintiff claims that the Court, in making this comment, was making a credibility determination which was improper at this stage of the litigation where it is required to

REPORT AND RECOMMENDATION
PAGE - 11

view all material facts in the light most favorable to Plaintiff. (*Id.*) Plaintiff argues that his factual allegations need only plausibly suggest an entitlement to relief. (*Id.* (citing *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).)

However, neither the facts alleged in Plaintiff's original complaint, nor those alleged in his proposed amendment to his complaint, plausibly suggest any entitlement to relief under § 1595. While Plaintiff paints himself as a victim of Defendant Bryan, the statutes under which Plaintiff seeks relief are directed at a type of coercion and compulsion "akin to African slavery." Plaintiff's allegations fall far short of demonstrating that Defendant Bryan engaged in any conduct which might reasonably be deemed to fall within the scope of these statutes.

### III.   CONCLUSION

Based on the foregoing, this Court recommends that Plaintiff's complaint and this action be dismissed with prejudice, under 28 U.S.C. § 1915(e)(2)(B), for failure to state a plausible claim for relief. The Court further recommends that Plaintiff's motion to amend his complaint (dkt. # 9) be denied as moot given that Plaintiff's proposed amendment to his complaint, like his original complaint, does not allege facts demonstrating that he has any plausible claim for relief against Defendant Bryan in this action. A proposed order accompanies this Report and Recommendation.

### IV.   OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's

REPORT AND RECOMMENDATION
PAGE - 12

motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 24, 2021**.

DATED this 2nd day of September, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13